1
2
3
4
5
6
7
8              UNITED STATES DISTRICT COURT

9           FOR THE EASTERN DISTRICT OF CALIFORNIA

10

11   JEREMY HARKINS,                        No.  2:20-cv-00347-DAD-JDP

12          Plaintiff,

13      v.                                  TENTATIVE PRETRIAL ORDER

14   SUTTER COUNTY, et al.,

15          Defendants.

16

17          On February 21, 2023, the court conducted a final pretrial conference.  Attorney Michael

18   Green appeared as counsel for plaintiff; attorney Paul A. Cardinale appeared as counsel for

19   defendants Sutter County, California Forensics Medical Group, Wellpath Management, Inc.,

20   Doris Brown, Lisa Rogers, and Sherill McGuire; attorney Jerome Martin Varanini appeared on

21   behalf of defendants California Forensics Medical Group, Wellpath Management, Inc., Doris

22   Brown, Lisa Rogers, Sherill McGuire, Genevieve Lewis and Michael Foskey.  Having considered

23   the parties' joint pretrial statement and the views of the parties presented at the conference, the

24   court issues this tentative pretrial order.

25          Plaintiff brings this civil rights action against defendants Sutter County, California

26   Forensics Medical Group, Doris Brown, Lisa Rogers, Wellpath Management, Inc., Sherill

27   McGuire, Genevieve Lewis, and Michael Foskey, with claims arising under 42 U.S.C. § 1983,

28   California Government Code § 845.6, and California state professional negligence law.

                                        1

I.    JURISDICTION/VENUE

Jurisdiction is predicated on 28 U.S.C. §§ 1331, 1343.  Jurisdiction is not contested.

Venue is proper pursuant to 28 U.S.C. § 1391(b).  Venue is not contested.

II.   JURY

Both parties have demanded a jury trial.  The jury will consist of eight or nine jurors.

III.  UNDISPUTED FACTS

1.    On February 11, 2019, plaintiff was arrested and incarcerated at Sutter County Jail
      for violation of probation stemming from an altercation that occurred in a bar in
      2017 while he working as a bouncer.  Plaintiff admitted to his violation of the
      conditions of his probation on February 28, 2019.

2.    There was no report by plaintiff at the time of his intake into the Sutter County Jail
      of any pain or discomfort with his ears or at all.

3.    On February 20, 2019, an Initial Health History and Physical Exam was performed
      and there was no report of any medical issue or complaint by plaintiff, including
      no report of a history of ear infections.

4.    On February 26, 2019, plaintiff completed a Sutter County Jail Inmate Request for
      Medical Attention stating "Major ear infection.  Throbbing and pressure."

5.    On February 27, 2019, plaintiff filled out a jail inmate request form stating, "I need
      medical attention ASAP.  I got a bad infection in my ear.  It's [sic] pain is going to
      my temple and down my neck.  Please Help Me."  Plaintiff's aunt called the jail on
      February 27, 2019, reporting that plaintiff was complaining of an earache; she
      reported that he gets them frequently with severe symptoms and pain.  Plaintiff
      had his vital signs taken by a medical assistant and he was then seen by FNP Doris
      Brown.

6.    Later that day plaintiff was seen by Doris Brown, FNP.  FNP Brown noted that
      plaintiff reported he had right sided ear pain since childhood and that his right ear
      had been hurting over the past three days and was getting worse. There was no
      drainage from the ear, no runny nose, no fever, cough, shortness of breath or chest

2

pain. Plaintiff was crying during the examination. The tympanic membrane in the right ear was not visible and FNP Brown noted the canal was swollen but there was no drainage. Plaintiff was diagnosed with an inner and outer ear infection. FNP Brown took samples from the ear and submitted them for culture and sensitivity testing. Plaintiff was placed on Cipro by FNP Brown.

7. That night, an incident report by Officer Hellwig stated that plaintiff used the intercom to inform her that he was having severe pain in his right ear. Officer Hellwig responded and noted plaintiff was crying and his whole body was shaking. Plaintiff stated he had an ear infection and felt as if his ear and head were going to explode. Officer Hellwig stated that it appeared plaintiff was in severe pain.

8. Officer Hellwig reported she contacted medical staff and advised them about plaintiff's condition, and they responded, by stating he had already been seen by medical staff earlier that day.

9. On February 28, 2019 4:15 am, Officer Hellwig again noted that Plaintiff was crying, sweating, and shaking. Plaintiff stated his ear was also bleeding. Officer Hellwig again contacted medical staff, and they declined to see plaintiff. Officer Hellwig then spoke with Sergeant Garcia. Sergeant Garcia then contacted medical staff and Officer Hellwig contacted medical staff again. Medical staff responded that they would not come see plaintiff, but would see him if he was brought to them.

10. Plaintiff was brought to medical on February 28, 2019, complaining of right ear pain. At 4:59 am, plaintiff was brought to medical staff, approximately 45 minutes after Officer Hellwig initially noted plaintiff was in distress that morning. He was crying and grimacing, with 10/10 ear pain. Vitals were taken and contact was made with FNP Brown. FNP Brown added Tylenol #3 (Codeine) to be given "stat" and an appointment with Dr. Matthew Foskey was made for "today."

11. Plaintiff was seen by Dr. Foskey on February 28, 2019, and Dr. Foskey noted that plaintiff was feeling a little better. Plaintiff had no fever, chills or headache, and

Dr. Foskey reported that plaintiff stated that his family had the same chronic ear infection that had been resolved after they had their tonsils and adenoids removed. Plaintiff reported he had not had such surgical removal himself.

12. Dr. Foskey noted moderate edema/erythema and serous discharge and was unable to visualize the tympanic membrane.  The plan was to continue the oral and topical antibiotics and for Mr. Harkins to be seen by an ENT specialist after release from jail.

13. FNP Brown saw plaintiff again on March 1, 2019.  Plaintiff was crying about pain in in his ear that was keeping him awake at night and that he had been told by a doctor that he, plaintiff, needed to have his tonsils and adenoids removed.  Plaintiff was asking to be taken to the hospital for the removal of his tonsils and adenoids. Plaintiff was crying, sitting on the examination table, sweating, asking for pain medication for his ear.  Plaintiff denied fever, chills, nausea, vomiting or facial pain at the time of this exam.  The right ear canal had mild erythema/edema with serous discharge and the tympanic membrane could not be visualized.  The treatment plan was to continue the antibiotics along with Tylenol and Benadryl.

14. On March 2, 2019, plaintiff filled out a Request for Medical Attention Form. Plaintiff stated his aunt called his primary doctor, who stated plaintiff needed to have medication every four to six hours as needed to keep the inflammation down. Plaintiff stated that he had pain and throbbing in his ear because his ear canal would swell closed and trap the infection behind the ear drum.  Plaintiff stated the inflammation would cause his ear drum to erupt and even possibly cause plaintiff to go deaf due to the pressure not being released.  Plaintiff requested on the Form for CFMG/Wellpath to contact Ampla Health of Rideout Hospital and ask for Dr. Schneider.  There is no record of anyone from CFMG/Wellpath calling Ampla Health or Rideout.  Plaintiff was not seen by a provider in response to this Request for Medical Attention; however, he continued to be seen by the nurses at the Jail.

/////

4

There is no record of plaintiff having been seen by Dr. Schneider prior to the time plaintiff arrived at the jail.

15. On March 3, 2019, plaintiff's girlfriend, Krista Culver, called the jail and was advised that she needed to speak with the jail medical manager.  Ms. Culver called again on March 4, 2019, and did speak with Heather Bassett, RN, the jail Health Services Administrator.  RN Bassett was told that plaintiff's ear infection was chronic and that he had previously been told to follow up with an ENT for possible extraction of his tonsil and adenoids but that Mr. Harkins had not followed up on that recommendation.  RN Bassett was also told that Ms. Culver had spoken with plaintiff's main doctor two days ago and that the doctor had said that the only treatment that would work for Mr. Harkins was high doses of strong antibiotics and ear drops.

16. RN Bassett asked for the name of the main doctor and was told it was a doctor at the last urgent care clinic where plaintiff had been seen and that although Ms. Culver did not have the name of the doctor, she could get the name for RN Bassett.  There is no record of Ms. Culver ever calling the jail back to provide the name of the doctor to the jail.

17. On March 4, 2019, plaintiff filed a Sutter County Jail Inmate Grievance stating "I have had an ear ach[e] and in terrible pain with ear bleeding. All I am given for this is 2 Ibuprofen in 24 hours. This med is to be given be given between 4-6 hours a day.  I keep asking for help but no one wants to do so.  I am up all night with pain. Please help me. My family is getting a lawyers [sic] advice."

18. Plaintiff was seen again by FNP Brown on March 7, 2019.  On examination, plaintiff had severe yellow, foul smelling drainage from his right ear, and plaintiff stated he noticed the discharge on his bed sheets in the morning.  Pain was still present.  Ms. Brown could still not see plaintiff's right ear drum.  Ms. Brown stated she would follow up Monday or sooner as necessary.  Ms. Brown further stated plaintiff needed to see an ENT upon release. Plaintiff had no elevated

5

temperature nor any chills. Plaintiff was prescribed Cipro ear drops three times a day.

19.    On March 8, 2019, plaintiff filled out a Sutter County Jail Inmate Grievance Form stating, "This is my 2nd try at getting help for my ear.  No one seems to understand the pain I am in.  Again I am asking for help.  What do I have to do to get the proper help I need?  The ibuprofen is not working.  I will continue to file these grievance forms until I get help."

20.    On March 11, 2019, plaintiff filled out another Request for Medical Attention Form stating, "I have a migraine behind my ears and temples, sinus infection."

21.    On March 13, 2019, plaintiff was still requesting to be sent out to an ENT. CFMG/Wellpath staff member Sarah Dickinson wrote a note on plaintiff's chart stating:  "Called Rideout ENT and spoke with Nat.  Asked about scheduling patient an appointment for after his release and she stated he'd need a referral from his outside provider since he has Medi-Cal.  If the referral came from CFMG/Wellpath, the bill would come here as we're the referring provider."

22.    On or about March 17, 2019, plaintiff informed Officer Weatherup that he had serious medical issues, and could not get out of bed as he was freezing, hyperventilating, and needed to go to the hospital.

23.    Later on March 17, 2019, Officer Villegas stated in a report, "Inmates came from Room 1 and stated Inmate Harkins was not looking good at all."  Officer Villegas noted plaintiff was sweating and shaking.  Plaintiff informed medical staff that he had "gone blind" could no longer see and had been losing sight for the last three days.  Plaintiff was transferred to an individual sobering cell where he was put under medical observation.  Video footage reveals him falling to the floor.  Sutter officers and CFMG/Wellpath responded and plaintiff was not verbally responsive. Plaintiff was then transferred via ambulance to the local emergency room where it was determined plaintiff had an infection that had spread to his brain.  It was ultimately discovered that plaintiff was found to have a cholesteatoma, a rare

abnormal collection of skin cells deep inside the ear that it is very difficult to detect that can cause recurrent ear infections.

24. Plaintiff was transported by ambulance from the jail to Rideout Hospital in Marysville, CA.  On exam, plaintiff's skin was diaphoretic (excessive sweating), his right ear was draining copious pus, and his ear drum could not be visualized. A CT scan showed an intracranial abscess.  Plaintiff also had a fever.

25. The staff at Rideout determined that he needed a higher level of care than what could be provided at their facility.  He was transported by helicopter via REACH to San Juan Mercy Hospital in Sacramento where he remained hospitalized until April 20, 2109 when he was transferred to UCSF for additional surgeries. At San Juan Mercy Hospital, Plaintiff was seen by Alex Nee, M.D. who noted Plaintiff's history including otitis externa, treatment with Cipro, which did not improve his symptoms.  He was found to have a recurrent right ear infection with mastoiditis and possible intracranial abscess, passive venous thrombosis with venous infarct, brain compression with clinical significance and obstructive hydrocephalus with acute respiratory failure.

26. On March 26, 2019, Joshua Lucas, M.D., performed a right supratentorial and infratentorial craniotomy for evacuation of epidural and intracerebral abscesses. He continued to have a right epidural abscess, right occipital lobe abscess, and right cerebellar abscess.

27. Due to an ongoing infection, on April 3, 2019, Marc Cabanne, D.O., performed a craniotomy for infection supratentorial and infratentorial with microscope, stereotactic navigation, Duragen duraplasty and external cavitary drain.  Plaintiff was kept intubated overnight.

28. April 5, 2019, Jonathan Sykes, M.D., noted the fact that the otolaryngologic needs of plaintiff were outside the scope of physicians at Mercy San Juan, and that plaintiff needed a referral to a tertiary university center neuro-otology subspecialists and neurosurgical availability.  Plaintiff started PT/OT.

29.   Plaintiff was transferred to UCSF on April 20, 2019 for a mastoidectomy.  ID was consulted for antibiotic management.  He remained there for 5 days.

30.   On April 22, 2019, Jeffrey Sharon, M.D., performed: 1) Tympanoplasty with mastoidectomy (canal wall down) without ossicular chain reconstruction, 2) Meatoplasty, 3) Monitoring of craniofacial nerve for 3 hours with use of binocular operating microscope for microdissection.  Plaintiff additionally underwent removal of an infected cholesteatoma at this time.

31.   After his tympanoplasty with CWD mastoidectomy and removal of infected cholesteatoma 4/22/2019, he was continued on IV Unasyn, Keppra 500 mg for seizure prophylaxis and MS Contin scheduled for pain.  Plaintiff started physical therapy.

32.   On April 25, 2019, plaintiff was discharged home with a double lumen PICC line. He was discharged home to his house with Ms. Culver, who was giving him IV antibiotics and doing full-time care.  He got an emergency medical clearance to go home.  He had a home health nurse that helped Ms. Culver with the antibiotics. Ms. Culver assisted with the wound care of the craniotomy site.

33.   April 30, 2019, plaintiff had an outpatient visit with Craig Rhoades, P.A., and was referred to a neurologist and infectious disease specialist.  He continued Keppra and oxycodone.

34.   Following plaintiff's discharge from UCSF, he continued to see healthcare providers for follow-up regarding pain, post-acute right mastoiditis and intracranial abscess surgery.  This included management of pain medications. Plaintiff reported loss of peripheral vision, dizziness, ataxia, headaches, fatigue, memory changes, and bilateral lower extremity weakness.  He additionally had to return to the emergency department on June 18, 2019, due to swelling to his right scalp surgical site and possible infection.  He also saw a neurosurgeon for worsening pain at the site of his mastoidectomy, two psychotherapists for depression, a physical therapist for ongoing back pain, an optometrist for loss of

peripheral vision, and a neurologist for continued headaches and difficulty coping with the sequelae of his infection.

IV.     DISPUTED FACTUAL ISSUES

1.     To what extent the standard of care was breached by defendants.

2.     Whether defendants were deliberately indifferent to plaintiff's serious medical needs.

3.     Whether plaintiff has permanent brain damage as a result of the infections.

4.     Whether plaintiff is legally blind as a result of the infections.

5.     Whether plaintiff has permanent balance problems as a result of the infections.

6.     Whether plaintiff has permanent major hearing loss as a result of the infections.

7.     Whether plaintiff has permanent neurological problems as a result of the infections.

8.     Whether plaintiff will need lifetime attendant care.

9.     Whether plaintiff is not currently employable.

10.     The extent of the future care required by plaintiff.

V.     DISPUTED EVIDENTIARY ISSUES/MOTIONS IN LIMINE

The parties have not yet filed motions *in limine*.  The court does not encourage the filing of motions *in limine* unless they are addressed to issues that can realistically be resolved by the court prior to trial and without reference to the other evidence which will be introduced by the parties at trial.  The parties anticipate filing the motions *in limine* below.  Any motions *in limine* counsel elects to file shall be filed no later than **21 days before trial**.  Opposition shall be filed no later than **14 days before trial** and any replies shall be filed no later than **10 days before trial**.  Upon receipt of any opposition briefs, the court will notify the parties if it will hear argument on any motions *in limine* prior to the first day of trial.

Plaintiff's Motions *in Limine*

1.     Motion to exclude irrelevant medical conditions

2.     Motion to exclude testimony from Defense Expert Kimberly Pearson, RN

3.     Motion to exclude testimony from defense experts

9

4.    Motion to exclude police reports, probation documents, and intricate details regarding underlying criminal case and convictions

5.    Motion to exclude prior bad acts of plaintiff

6.    Motion to exclude evidence or argument of any insurance of other collateral source

7.    Motion to exclude any opinions from defense contesting plaintiff's inability to work

8.    Motion to exclude defense economist response regarding plaintiff's future loss of earning capacity and loss of income claims

9.    Motion to exclude irrelevant history of ear infections

10.    Motion to exclude unsupported claims of extensive history ear infections

11.    Motion to exclude defense experts' specific unsupported factual narratives

Defendant's Motions *in Limine*

1.    Motion to exclude evidence, argument or testimony of subsequent remedial measures taken by defendants Sutter County or Wellpath Management, Inc.

2.    Motion to exclude evidence or testimony concerning plaintiff's girlfriend's emotional distress attributed to the events and plaintiff's injuries

3.    Motion to exclude evidence of other lawsuits against defendants Sutter County and/or Wellpath Management, Inc.

4.    Motion to preclude evidence or argument that insurance may pay some portion of any judgment against the defendants

5.    Motion to preclude evidence or argument that the Wellpath entities may pay some portion of any judgment against the individual defendants

6.    Motion to preclude any witness from opining as to the amount of an appropriate punitive damages award

7.    Motion to limit testimony from plaintiffs' experts to reports and deposition testimony

8.    Motion to exclude personal preferences of treatment of plaintiff's expert witnesses

9.     Motion to exclude testimony of plaintiff or lay witnesses from testifying regarding medical matters

10.     Motion to exclude alleged acts of negligence and/or deliberate indifference which were not the cause of harm to plaintiff

11.     Motion to exclude opinions of plaintiff's expert Dr. McMunn that defendants' expert Dr. Joshua is unqualified to render opinions as to the standard of care of nursing

12.     Motion to exclude opinions of plaintiff's expert Dr. McMunn rendering any opinions as to the standard of care as to medical doctors or physicians

13.     Motion to limit testimony of plaintiff's expert Dr. McMunn to rebuttal opinions

VI.     SPECIAL FACTUAL INFORMATION

Pursuant to Local Rule 281(b)(6), the parties have provided the following special factual information that pertains to this action:

Plaintiff was incarcerated at Sutter County Jail in February of 2019. During his incarceration he developed a severe ear infection. From February 26, 2019 through March 17, 2019, plaintiff repeatedly requested medical care for his ear infection. Over the time he was requesting medical care, plaintiff's ear infection spread into his brain and formed abscesses. He then began to deteriorate neurologically and was unresponsive on March 17, 2019. Plaintiff was then sent to the emergency room. Plaintiff claims the standard of care was repeatedly violated and defendants were deliberately indifferent to his medical needs.

Defendants will claim the standard of care was not violated and defendants were not subjectively deliberately indifferent.

Plaintiff was 30 years old at the time of the incident and will be 33 years old at the time of trial. Plaintiff suffered from a right ear infection with mastoiditis, intracranial abscess, passive venous thrombosis with venous infarct, brain compression with clinical significance and obstructive hydrocephalus with acute respiratory failure. On March 17, 2019, plaintiff was first taken to Rideout Hospital where the staff recognized that plaintiff needed a higher level of care than what could be provided at their facility. Plaintiff was transferred by helicopter to San Juan Mercy Hospital in Sacramento where he was remained in the ICU until April 20, 2019, when he was transferred to UCSF hospital for additional surgeries.

Plaintiff's extensive injuries required two craniotomies. The first, on March 26, 2019, Plaintiff underwent a right supratentorial and infratentorial craniotomy for evacuation of epidural and

11

intracerebral abscess. Plaintiff's infection was so severe it would not heal and plaintiff underwent the second craniotomy on April 3, 2019, for infection supratentorial and infratentorial with microscope, stereotactic navigation, DuraGen duraplasty and external cavitary drain. After the second craniotomy, plaintiff's physicians began to source a referral location for plaintiff's continued care.

Plaintiff is legally blind, has major permanent hearing loss, and has permanent balance problems. Plaintiff has major neurological deficits and claims that he cannot ever be employed. Plaintiff alleges that Plaintiff requires lifetime attendant care.

Plaintiff has $270,000 in past paid medical bills. Plaintiff has a $1,414,437 loss of future earning capacity claim. Plaintiff has a life care plan of $16,053,574 - $18,481,961. Defendants' expert's life care plan is values at $1,926,948–$2,196,287.

Plaintiff's general damages are not capped in a deliberate indifference case. In the event of a medical malpractice case, Plaintiff's general damages are capped at $250,000.

VII.    RELIEF SOUGHT

1.    Plaintiff seeks general damages, special damages, and punitive damages against defendants.

2.    Plaintiff also seeks to recover attorneys' fees under 42 U.S.C. § 1988.

VIII.    POINTS OF LAW

The claims and defenses arise under both federal and state law. Plaintiff's claims brought under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and failure to protect from harm in violation of the Fourteenth and Eighth Amendments are brought against all defendants. Plaintiff's claims brought under 42 U.S.C. § 1983 for inadequate policies, customs, and/or practices and failure to train/supervise resulting in deprivation of medical care to plaintiff and failure to protect plaintiff from harm in violation of the Fourteenth and Eighth Amendments are brought against defendants Sutter County, California Forensics Medical Group, and Wellpath Management, Inc. Plaintiff's claims for violation of California Government Code § 845.6 and professional negligence are brought against all defendants.

1.    The elements of, standards for, and burden of proof in a claim brought under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and failure to protect from harm in violation of the Fourteenth Amendment.

2.     The elements of, standards for, and burden of proof in a claim brought under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and failure to protect from harm in violation of the Fourteenth Amendment based on alleged *Monell* liability.

3.     The elements of, standards for, and burden of proof in a claim brought under 42 U.S.C. § 1983 for failure to train/supervise resulting in deprivation of medical care and failure to protect from harm in violation of the Fourteenth Amendment.

4.     The elements of, standards for, and burden of proof in a claim brought under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and failure to protect from harm in violation of the Eighth Amendment.

5.     The elements of, standards for, and burden of proof in a claim brought under 42 U.S.C. § 1983 for deliberate indifference to serious medical needs and failure to protect from harm in violation of the Eighth Amendment based on alleged *Monell* liability.

6.     The elements of, standards for, and burden of proof in a claim brought under 42 U.S.C. § 1983 for failure to train/supervise resulting in deprivation of medical care and failure to protect from harm in violation of the Eighth Amendment.

7.     The elements of, standards for, and burden of proof in a claim brought under California Government Code § 845.6.

8.     The elements of, standards for, and burden of proof in a professional negligence claim brought under state law.

Trial briefs addressing the points of law implicated by these remaining claims shall be filed with this court no later than **7 days before trial** in accordance with Local Rule 285.

ANY CAUSES OF ACTION OR AFFIRMATIVE DEFENSES NOT EXPLICITLY ASSERTED IN THE PRETRIAL ORDER UNDER POINTS OF LAW AT THE TIME IT BECOMES FINAL ARE DISMISSED, AND DEEMED WAIVED.

/////

/////

13

IX.      ABANDONED ISSUES

    1.      Defendants' twenty-nine affirmative defenses.[1]

X.      WITNESSES

Plaintiff's witnesses shall be those listed in **Attachment A**.  Defendants' witnesses shall be those listed in **Attachment B**.  Each party may call any witnesses designated by the other.

    A.  **The court does not allow undisclosed witnesses to be called for any purpose, including impeachment or rebuttal, unless they meet the following criteria:**

        (1)  The party offering the witness demonstrates that the witness is for the purpose of rebutting evidence that could not be reasonably anticipated at the pretrial conference, or

        (2)  The witness was discovered after the pretrial conference and the proffering party makes the showing required in paragraph B, below.

    B.  Upon the post pretrial discovery of any witness a party wishes to present at trial, the party shall promptly inform the court and opposing parties of the existence of the unlisted witnesses by filing a notice on the docket so the court may consider whether the witnesses shall be permitted to testify at trial.  The witnesses will not be permitted unless:

        (1)  The witness could not reasonably have been discovered prior to the discovery cutoff;

        (2)  The court and opposing parties were promptly notified upon discovery of the witness;

        (3)  If time permitted, the party proffered the witness for deposition; and

        (4)  If time did not permit, a reasonable summary of the witness's testimony was provided to opposing parties.

---

[1] Defendant Sutter County asserts eighteen affirmative defenses in its answer.  The remaining defendants assert eleven affirmative defenses in their answer.  However, defendants have not identified any affirmative defenses as points of law remaining for trial.  In their objections to this tentative pretrial order, defendants are instructed to clarify whether all of defendants' affirmative defenses have been abandoned, and if not, which affirmative defenses remain as points of law for purposes of the trial of this case.

14

XI.     EXHIBITS, SCHEDULES, AND SUMMARIES[2]

Plaintiff's exhibits are listed in **Attachment C**.  Defendant's exhibits are listed in **Attachment D**.  No exhibit shall be marked with or entered into evidence under multiple exhibit numbers, and the parties are hereby directed to meet and confer for the purpose of designating joint exhibits and to provide a list of joint exhibits.  All exhibits must be pre-marked as discussed below.  At trial, joint exhibits shall be identified as JX and listed numerically, e.g., JX-1, JX-2.  Plaintiff's exhibits shall be listed numerically, and defendants' exhibits shall be listed alphabetically.

The parties must prepare three (3) separate exhibit binders for use by the court at trial, with a side tab identifying each exhibit in accordance with the specifications above.  Each binder shall have an identification label on the front and spine.  The parties must exchange exhibits no later than **28 days before trial**.  Any objections to exhibits are due no later than **14 days before trial**.  The final exhibits are due **the Thursday before the trial date.**  In making any objection, the party is to set forth the grounds for the objection.  As to each exhibit which is not objected to, no further foundation will be required for it to be received into evidence, if offered.

**The court does not allow the use of undisclosed exhibits for any purpose, <u>including impeachment or rebuttal</u>, unless they meet the following criteria**

A.     The court will not admit exhibits other than those identified on the exhibit lists referenced above unless:

(1)     The party proffering the exhibit demonstrates that the exhibit is for the purpose of rebutting evidence that could not have been reasonably anticipated, or

(2)     The exhibit was discovered after the issuance of this order and the proffering party makes the showing required in paragraph B, below.

/////

---

[2]  At the final pretrial conference, the parties were instructed to identify their listed exhibits with greater specificity (by date, Bates stamp number, author or other appropriate description) in their objections to this tentative pretrial order in order for the final pretrial order to eliminate any unnecessary disputes over the exhibits that each party intends to offer at trial.

15

B.   Upon the discovery of exhibits after the discovery cutoff, a party shall promptly inform the court and opposing parties of the existence of such exhibits by filing a notice on the docket so that the court may consider their admissibility at trial.  The exhibits will not be received unless the proffering party demonstrates:

(1)   The exhibits could not reasonably have been discovered earlier;

(2)   The court and the opposing parties were promptly informed of their existence;

(3)   The proffering party forwarded a copy of the exhibits (if physically possible) to the opposing party. If the exhibits may not be copied the proffering party must show that it has made the exhibits reasonably available for inspection by the opposing parties.

## XII.   DISCOVERY DOCUMENTS

Counsel must lodge the sealed original copy of any deposition transcript to be used at trial with the Clerk of the Court no later than **14 days before trial**.

The parties[3] have indicated the intent to use the following discovery documents at trial:[4]

1.   Plaintiff's Request for Production of Documents, Set One to Defendant CFMG (dated January 14, 2021);

2.   Defendant CFMG's Response to Plaintiff's Request for Production of Documents, Set  One (dated April 9, 2021);

3.   Defendant CFMG's Supplemental Response to Plaintiff's Request for Production of Documents, Set One (dated May 16, 2021);

4.   Defendant CFMG's Further Supplemental Response to Plaintiffs Request for Production of Documents, Set One (dated May 25, 2021);

/////

---

[3]  In their objections to this pretrial order, the parties are directed to specify which parties intend to use which of the listed discovery documents at trial.

[4]  If the parties intend to use deposition transcripts at trial, even for rebuttal, the parties are directed to provide a list of such deposition transcripts in their objections to this tentative pretrial order.

5.   Plaintiff's Responses to Sutter County's Special Interrogatories, Set One (dated September 2, 2020);

6.   Plaintiff's Responses to Sutter County's Requests for Admission, Set One (dated September 2, 2020);

7.   Plaintiff's Responses to Sutter County's Requests for Production of Documents, Set One (dated September 2, 2020);

8.   Plaintiff's Supplemental Responses to Sutter County's Request for Production of Documents, Set One (dated January 8, 2021);

9.   Plaintiff's Responses to Defendant CFMG's Interrogatories, Set One (dated September 27, 2021);

10.  Plaintiff's Responses to Defendant CFMG's Request for Production of Documents, Set One (dated September 27, 2021);

11.  Plaintiff's Response to Defendant Officer Laurie Helzer's Interrogatories, Set One (dated April 4, 2022);

12.  Plaintiff's Response to Defendant Officer Laurie Helzer's Request for Production of Documents, Set One (dated April 4, 2022);

13.  Plaintiff's Response to Defendant Sheriff Brandon Barnes' Interrogatories, Set One (dated April 4, 2022);

14.  Plaintiff's Responses to Defendant Sheriff Brandon Barnes' Request for Production of Documents, Set One (dated April 4, 2022);

15.  Plaintiff's Responses to Defendant Officer Michael Weatherup's Interrogatories, Set One (dated April 4, 2022);

16.  Plaintiff's Responses to Defendant Officer Michael Weatherup's Request for Production of Documents, Set One (dated April 4, 2022);

17.  Plaintiff's Responses to Defendant Sergeant Kaitlyn Olson's Interrogatories, Set One (dated April 4, 2022);

18.  Plaintiff's Responses to Defendant Sergeant Kaitlyn Olson's Request for Production of Documents, Set One (dated April 4, 2022);

17

19.     Plaintiff's Responses to Defendant Officer Ethan Brooks' Interrogatories, Set One (dated April 4, 2022);

20.     Plaintiff's Responses to Defendant Officer Ethan Brooks' Request for Production of Documents, Set One (dated April 4, 2022);

21.     Plaintiff's Responses to Defendant Captain Dan Butler's Interrogatories, Set One (dated April 4, 2022);

22.     Plaintiff's Responses to Defendant Captain Dan Butler's Request for Production of Documents, Set One (dated April 4, 2022);

23.     Plaintiff's Responses to Defendant Former Sergeant Lester Eaton's Interrogatories, Set One (dated April 4, 2022);

24.     Plaintiff's Responses to Defendant Former Sergeant Lester Eaton's Request for Production of Documents, Set One (dated April 4, 2022);

25.     Plaintiff's Responses to Defendant Sergeant Jose Garcia-Cortes' Interrogatories, Set One (dated April 4, 2022);

26.     Plaintiff's Responses to Defendant Sergeant Jose Garcia-Cortes' Request for Production of Documents, Set One (dated April 4, 2022);

27.     Plaintiff's Responses to Defendant Sergeant Gloria Hernandez's Interrogatories, Set One (dated April 4, 2022);

28.     Plaintiff's Responses to Defendant Sergeant Gloria Hernandez's Request for Production of Documents, Set One (dated April 4, 2022);

29.     Plaintiff's Responses to Defendant CFMG's Request for Production of Documents, Set One, Propounded on March 11, 2022 (dated April 11, 2022);

30.     Plaintiff's Responses to Defendant CFMG's Interrogatories, Set One, Propounded on March 11, 2022 (dated April 11, 2022).

XIII.   FURTHER DISCOVERY OR MOTIONS

None.  Discovery and law and motion are closed under the court's previously issued scheduling order.

/////

18

XIV.   STIPULATIONS

The parties stipulate as to the date plaintiff was incarcerated and the date plaintiff was released from jail.

XV.   AMENDMENTS/DISMISSALS

None.

XVI.   SETTLEMENT

The parties have engaged in mediation twice before Retired Judge Raul A. Ramirez.  The parties have not yet participated in a court-ordered settlement conference.  Accordingly, the court will refer this case to the assigned magistrate judge for the setting of a settlement conference.  Depending on the assigned magistrate judge's settlement conference procedures, the assigned magistrate judge may hold the settlement conference or may arrange for a different magistrate judge to hold the settlement conference.

XVII.   JOINT STATEMENT OF THE CASE

The parties have agreed to the following neutral statement of the case to be read to the prospective jurors:

> This is a Civil Rights and Medical Malpractice case. Plaintiff alleges Defendants were deliberately indifferent to his medical needs and violated the standard of care. Defendants contend they were not deliberately indifferent to Plaintiff's medical needs, and that they did not violate the standard of care.

XVIII. SEPARATE TRIAL OF ISSUES

None.

XIX.   IMPARTIAL EXPERTS/LIMITATION OF EXPERTS

None.

XX.   ATTORNEYS' FEES

Plaintiff will seek attorneys' fees and costs if he prevails.

XXI.   TRIAL PROTECTIVE ORDER AND REDACTION OF TRIAL EXHIBITS

None.

XXII.  MISCELLANEOUS

None.

1  XXIII. <u>ESTIMATED TIME OF TRIAL/TRIAL DATE</u>

2        Jury trial is set for October 11, 2023, at 9:00 a.m. in Courtroom 4 before the Honorable

3  Dale A. Drozd.  At this time trial is anticipated to last 15 court days.  The parties are directed to

4  Judge Drozd's Standing Order in Civil Actions available on his webpage on the court's website.

5        Counsel are directed to call Pete Buzo, courtroom deputy, at (916) 930-4016, one week

6  prior to trial to ascertain the status of the trial date.

7  XXIV. <u>PROPOSED JURY *VOIR DIRE* AND PROPOSED JURY INSTRUCTIONS</u>

8        The parties shall file any proposed jury *voir dire* **7 days before trial**.  Each party will be

9  limited to fifteen minutes of supplemental jury *voir dire*.

10        The court directs counsel to meet and confer in an attempt to generate a joint set of jury

11  instructions and verdicts.  The parties shall file any such joint set of instructions **14 days before**

12  **trial**, identified as "Joint Jury Instructions and Verdicts."  To the extent the parties are unable to

13  agree on all or some instructions and verdicts, their respective proposed instructions are due **14**

14  **days before trial**.

15        Counsel shall e-mail a copy of all proposed jury instructions and verdicts, whether agreed

16  or disputed, as a Word document to <u>dadorders@caed.uscourts.gov</u> no later than **14 days before**

17  **trial**; all blanks in form instructions should be completed and all brackets removed.

18        Objections to proposed jury instructions must be filed **7 days before trial**; each objection

19  shall identify the challenged instruction and shall provide a concise explanation of the basis for

20  the objection along with citation of authority.  When applicable, the objecting party shall submit

21  an alternative proposed instruction on the issue or identify which of his or her own proposed

22  instructions covers the subject.

23  XXV.  <u>TRIAL BRIEFS</u>

24        As noted above, trial briefs are due **7 days before trial**.

25  XXVI. <u>OBJECTIONS TO PRETRIAL ORDER</u>

26        Each party is granted **14 days from the date of this order** to file objections to the same.

27  Each party is also granted **7 days thereafter** to respond to the other party's objections.  If no

28  objections are filed, the order will become final without further order of this court.

1    The parties are reminded that pursuant to Rule 16(e) of the Federal Rules of Civil

2 Procedure and Local Rule 283 of this court, this order shall control the subsequent course of this

3 action and shall be modified only to prevent manifest injustice.

4    IT IS SO ORDERED.

5 Dated:   **March 14, 2023**

6                                                                    UNITED STATES DISTRICT JUDGE

21

**ATTACHMENT A**

Plaintiff's Witness List

1.  Jeremy Harkins (Plaintiff), c/o Abbey, Weitzenberg, Warren & Emery, 100 Stony Point Road, Ste. 200, Santa Rosa, CA 95401

2.  Krysta Culver (Plaintiff's partner), c/o Abbey, Weitzenberg, Warren & Emery, 100 Stony Point Road, Ste. 200, Santa Rosa, CA 95401

3.  Melanie Unruh (Plaintiff's aunt), c/o Abbey, Weitzenberg, Warren & Emery, 100 Stony Point Road, Ste. 200, Santa Rosa, CA 95401

4.  Willard E. Fee, M.D., (Plaintiff's ENT Expert), 3705 Brandy Rock Way, Redwood City, CA 94061

5.  Howard Pitchon, M.D., (Plaintiff's Infection Disease Expert), 435 N. Bedford Drive, Ste. 402, Beverly Hills, CA 90210

6.  David M. Mathis, M.D., (Plaintiff's Correctional Medicine Expert), 4107 Casper Way, Napa, CA 94558

7.  Jack E. Miller, M.D., (Plaintiff's Neurological Expert), P.O. Box 60, Petaluma, CA 94953

8.  Thomas Van Vleet, Ph.D., (Plaintiff's Neuropsych. Expert), 3947 Opal Street, Oakland, CA 94609

9.  Mechel Henry, M.D., (Plaintiff's Psychiatric Expert), 1300 Clay Street, Ste. 600, Oakland, CA 94612

10. Diana Bubanja, DPT, (Plaintiff's Life Care Planning Expert), 3478 Buskirk Ave, #335, Pleasant Hill, CA 94523

11. Enrique Vega, MS, (Plaintiff's Vocational Economics Expert), 20700 Ventura Blvd, Ste. 220, Woodland Hills, CA 91364

12. Michael McMunn, DNP (Plaintiff's Standard of Care Correctional Facility Expert), 4110 Lakeside Blvd, Monroe, GA 30655

13. Christopher Kuiken (Former Inmate with Plaintiff at Sutter County Jail), 2106 Holcomb Ave., Yuba City, CA 95993

/////

14.     Daniel Swars (Former Inmate with Plaintiff at Sutter County Jail), 737 Lask Drive, Yuba City, CA 95991

15.     Jeffrey Looney (Inmate at Sutter County Jail), c/o Sutter County Jail, 1077 Civic Center Blvd., Yuba City, CA 95993

16.     John George (Inmate at Sutter County Jail), c/o Sutter County Jail, 1077 Civic Center Blvd., Yuba City, CA 95993

17.     James Choate (Inmate at Sutter County Jail), c/o Sutter County Jail, 1077 Civic Center Blvd., Yuba City, CA 95993

18.     Chris Mertens (Inmate at Sutter County Jail), c/o Sutter County Jail, 1077 Civic Center Blvd., Yuba City, CA 95993

19.     Brent Gordon, M.D. - Rideout Memorial Hospital Emergency Room Physician, 726 4th St., Marysville, CA 95901

20.     Hector Lopez, M.D. - Rideout Memorial Hospital Emergency Room Physician, 726 4th St., Marysville, CA 95901

21.     John Krol, M.D. - Rideout Memorial Hospital Radiologist, 726 4th St., Marysville, CA 95901

22.     Rahul Gupta, M.D. - Rideout Memorial Hospital Radiologist, 726 4th St., Marysville, CA 95901

23.     Binh Quach, MD - Rideout Memorial Hospital Radiologist, 726 4th St., Marysville, CA 95901

24.     Howard Fan, M.D. - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

25.     Jacob Bair, D.O. - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608)

26.     Robert Zimmerman, M.D. - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

27.     Howard Fan, M.D. - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

28.  Brandon Whann, PA - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

29.  Daniel Jaramillo, PA-C - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

30.  Alex Nee, M.D. - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

31.  Jesse Babbitz, M.D. - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

32.  Joshua Lucas, M.D. - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

33.  Marc Cabanne, M.D. - Northern CA. NeuroSpine Institute and Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

34.  Kiersten Riedler, M.D. - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

35.  Jonathan Sykes, M.D. - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

36.  Jeremy Kadish, DO - Mercy San Juan Hospital Physician, 6501 Coyle Ave., Carmichael, CA 95608

37.  Craig Rhoades, PA - Harmony Health Medical Clinic Physician, 1908 N. Beale Rd., Marysville, CA 95901

38.  Theresa Bowell, LCSW - Harmony Health Medical Clinic, 1908 N. Beale Rd., Marysville, CA 95901

39.  Harpreet Johl, M.D. - Harmony Health Medical Clinic, 1908 N. Beale Rd., Marysville, CA 95901

40.  Jagmohan Thiara, Psychiatric NP - Harmony Health Medical Clinic, 1908 N. Beale Rd., Marysville, CA 95901

41.  Jessica Jane Briggs, M.D. - UCSF Infection Disease Physician, 505 Parnassus Ave., San Francisco, CA 94143

42.   Jeffrey Sharon, M.D. - UCSF Neurologist, , 505 Parnassus Ave., San Francisco, CA 94143

43.   Abel P. David, M.D. - UCSF Otolaryngologist, 505 Parnassus Ave., San Francisco, CA 94143

44.   Elizabeth Shuman, M.D. - UCSF Otolaryngologist, 505 Parnassus Ave., San Francisco, CA 94143

45.   Ramin Morshed, M.D. - UCSF Neurologist, , 505 Parnassus Ave., San Francisco, CA 94143

46.   Wendy K. Lyle, Ph.D - Psychologist, 438 Colusa Ave, Ste. A, Yuba City, CA 95991

47.   Marina Rocchi, M.D. - Chico Eye Center Optometrist, 3401 Esplanade, Chico, CA 95973

48.   Himaja Peddi, M.D. - Neuroradiology, Sutter Imaging Sacramento, 3161 L Street, Sacramento, CA 95816

49.   Custodian of Medical and Billing Records - UCSF Medical Center, 6425 Christie Ave., Emeryville, CA 94608

50.   Custodian of Medical and Billing Records - Mercy San Juan Medical Center, 10540 White Rock Rd., Ste. 150, Rancho Cordova, CA 95670

51.   Custodian of Medical and Billing Records - Rideout Memorial Hospital, 726 4th Street, Marysville, CA 95901

52.   Custodian of Medical and Billing Records - Harmony Health Medical Clinic, 1908 N. Beale Rd., Ste. E, Marysville, CA 95901

53.   Custodian of Medical and Billing Records - Bi-County Ambulance, 1700 Poole Blvd., Yuba City, CA 95993

54.   Custodian of Medical and Billing Records - Reach Air Medical Services, P.O. Box 930, West Plains, MO 65775

55.   Custodian of Medical and Billing Records - Northern California NeuroSpine Institute, 1625 Creekside Drive, Ste. 200, Folsom, CA 95630

56.   Custodian of Medical and Billing Records - California Forensic Medical Group/WellPath at Sutter County Jail, 1077 Civic Center Blvd., Yuba City, CA 95993

57. Custodian of Records - Sutter County Jail, 1077 Civic Center Blvd., Yuba City, CA 95993

58. Alfred Joshua, M.D. - Defense Expert, P.O. Box 5000 PMB 525, Rancho Santa Fe, CA 92067

59. Derrick P. Olzack, PA-C - Defense Expert, 2092 Peace Court, Atwater, CA 95301

60. Edwin C. Amos, M.D. - Defense Expert, 2021 Santa Monica Blvd., Ste. 525E, Santa Monica, CA 90404

Kimberly Pearson, MHA - Defense Expert, 22 Gallinas Dr., Spring Creek, NV 89815

61. Erik Volk - Defense Expert, 1999 Harrison Street, Ste. 1440, Oakland, CA 94612

62. Joshua Sckolnick, M.D. - Defense Expert, 1501 Trousdale Drive, 3rd Floor, Burlingame, CA 94010

63. Howard J. Friedman, Ph.D - 1855 San Miguel Dr., Ste. 23, Walnut Creek, CA 94596

64. Raymond Herr, M.D. - Person Most Knowledgeable of CFMG Raymond Herr, M.D.

65. Matthew Foskey, DO (Defendant) - Physician for CFMG/Sutter County Jail

66. Doris Brown, FNP (Defendant) - Family Nurse Practitioner for CFMG/Sutter County Jail

67. Esther Tupaz, LVN - Licensed Vocational Nurse for CFMG/Sutter County Jail

68. Heather Bassett, RN - Registered Nurse for CFMG/Sutter County Jail

69. Lisa Rogers, RN (Defendant) - Registered Nurse for CFMG/Sutter County Jail

70. Sarah Dickinson, Medical Assistant (Defendant) - Medical Assistant for CFMG/Sutter County Jail

71. Sherril McGuire, RN (Defendant) - Former Registered Nurse for CFMG/Sutter County Jail

72. Officer Harrison Hellwig, (Defendant) - Correctional Officer for Sutter County Jail

73. Officer Ethan Brooks, (Defendant) - Correctional Officer for Sutter County Jail

74. Officer Michael Weatherup, (Defendant) - Correctional Officer for Sutter County Jail

75. Officer Gloria Hernandez Espana, (Defendant) - Correctional Officer for Sutter County Jail

76. Officer Walter Villegas, (Defendant) - Correctional Officer for Sutter County Jail

**ATTACHMENT B**

Defendants' Witness List

1.     Custodian of Medical Records -California Forensic Medical Group, at Sutter County Jail, 1077 Civic Center Blvd., Yuba City, CA 95993

2.     Alfred Joshua, M.D., Defense Medical and Procedural Expert Witness P.O. Box 5000 PMB 525, Ranchi Santa Fe, CA 92067

3.     Kimberly Pearson, MHA, MBA, RN, CCHP, Defense Nursing and Policy and Procedure Expert, 355 W. Mesquite Blvd., Ste D 30-472, Mesquite, NV 89027

4.     Dr. Edwin C. Amos, M.D., Defense Medical Consultant, 2021 Santa Monica Blvd., Ste. 525E, Santa Monica, CA 90404

5.     Erik Volk, Defense Expert Witness, 1999 Harrison Street, Ste. 1440, Oakland, CA 94612

6.     Howard Friedman, Ph.D. Defense Expert Witness, 1855 San Miguel Drive., Ste. 23, Walnut Creek, CA 94596

7.     Derrick P. Olzack, PA-C, Defense Expert Witness, 2092 Peace Court, Atwater, CA 95301

8.     Raymond Herr, M.D., Person Most knowledgeable for CFMG (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

9.     Matthew Foskey, DO, (Defendant) Medical Physician for CFMG (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

10.    Doris Brown, FNP, (Defendant) Family Nurse Practitioner, CFMG (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

11.    Heather Bassett, RN CFMG/Sutter, (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

12.    Lisa Rogers, RN (Defendant) CFMG/Sutter (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

13.    Sarah Dickinson, MA, CFMG/Sutter (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

14.    Sherril McGuire, RN (defendant) CFMG/Sutter (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

15.  Genevieve Lewis, RN (Defendant) CFMG/Sutter, (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

16.  Esther Tupaz, LVN, CFMG/Sutter (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

17.  Custodian of Records, Sutter County (Defendant) (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

18.  Brenda Franks, LMFT, CFMG/Sutter (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

19.  Officer Michael Weatherup, Sutter County (c/o Paul Cardinale, Medical Defense Law Group, 3800 Watt Avenue, Suite 245, Sacramento CA 95821)

**ATTACHMENT C**

Plaintiff's Exhibit List

1.    Plaintiff's Entire CFMG Medical Chart

2.    2/24/19 Discipline Report

3.    2/26/19 Medical Request Form

4.    2/27/19 Inmate Request Form

5.    2/27/19 Nightshift Briefing Report

6.    2/28/19 Dayshift Briefing Report

7.    2/28/19 Incident Report

8.    3/02/19 Medical Request Form

9.    3/04/19 Inmate Grievance Form

10.   3/06/19 Inmate Grievance Form

11.   3/11/19 Medical Request Form

12.   3/17/19 Sutter County Jail Email

13.   3/17/19 Discipline Report

14.   3/17/19 Dayshift Briefing Report

15.   3/17/19 Nightshift Briefing Report

16.   3/17/19 Observation Cell Form

17.   3/17/19 Incident/Medical Report Form by Olson

18.   3/17/19 Incident/Medical Report Form by Officer Villegas

19.   3/17/19 Incident/Medical Report Form by Officer Weatherup

20.   3/18/19 Supplemental Incident/Medical Report Form by Officer Weatherup

21.   3/17/19 Jail Videos (2) (COUNTY_000932-000933)

22.   3/19/19 Sutter County Jail Email to Bassett

23.   3/19/19 Email from Sgt. Eaton Recognizing Officer Accomplishment

24.   Sutter County Jail Recorded Phone Calls (57)

25.   Sutter County Jail Audio Logs

26.   Plaintiff's Medical Records - Rideout Hospital (relevant portions)

27. Plaintiff's Medical Records - Mercy San Juan (relevant portions)

28. Plaintiff's Medical Records - UCSF (relevant portions)

29. Plaintiff's Medical Records - California Neurospine Institute (relevant portions)

30. Plaintiff's Medical Records - Chico Eye Center (relevant portions)

31. Plaintiff's Medical Records - Sierra Injury and Sports Rehab (relevant portions)

32. Plaintiff's Medical Records - Harmony Health Medical Clinic (relevant portions)

33. Plaintiff's Medical Records - Yuba City Advanced Imaging Center (relevant portions)

34. Plaintiff's Medical Records - Enloe Medical Center (relevant portions)

35. Plaintiff's Medical Records - Sutter Imaging Sacramento (relevant portions)

36. Plaintiff's Medical Records - REACH Air Transport

37. Plaintiff's Medical Records - Bi-County Ambulance

38. Plaintiff's Radiology Imaging and Reports

39. Photographs of Plaintiff

40. CMCG Employee Handbook February 2018

41. CMCG Sutter County Adult Facilities Policy and Procedures Manual, February 2019

42. CMCG Policy and Procedure Manual 2018–2019

43. CMCG Registered Nurse Protocols, July 2018

44. CFMG Generic County Adult Standardized Procedures for Registered Nurses, May 2017

45. Sutter County Sheriff's Jail Operations Manual, January 2019

46. Sutter County Sheriff's Jail Operations Manual, March 22, 2018

47. Sutter County Jail Booking Documents

48. Sutter County Jail Admission Evaluation

49. Sutter County Sheriff's Department Records regarding Plaintiff's incarceration

50. Plaintiff's Expert Enrique Vega's Curriculum Vitae, Vocational Economics Assessment Report and Economic Analysis Report

51. Plaintiff's Expert Diana Bubanja's Curriculum Vitae and Life Care Plan

52. Plaintiff's Expert Howard Pitchon, M.D.'s Curriculum Vitae and Expert Report

53. Plaintiff's Expert Mechel Henry, M.D.'s Curriculum Vitae and Expert Report

54. Plaintiff's Expert Jack E. Miller, M.D.'s Curriculum Vitae and Expert Report

55. Plaintiff's Expert David M. Mathis, M.D.'s Curriculum Vitae and Expert Report

56. Plaintiff's Expert Thomas M. Van Vleet, Ph.D.'s Curriculum Vitae and Neuropsychological Assessment

57. Plaintiff's Expert Willard Fee, M.D.'s Curriculum Vitae and Expert Report

58. Plaintiff's Expert Michael McMunn, DNP's Curriculum Vitae and Expert Report

59. Defendants' Expert Alfred Joshua, M.D.'s Expert Report

60. Defendants' Expert Kimberly Pearson's Expert Report

61. Defendants' Expert Edwin C. Amos, M.D.'s Expert Report

62. Defendants' Expert Derrick P. Olzack, PA-C's Expert Report

63. Defendants' Expert Eric Volk's Expert Report

64. Sutter County Jail Booking Information 2/11/19

65. Sutter County Jail Booking Report 2/12/19

66. 3/18/19 Letter from Sergeant Lester E. Eaton re Release of Inmate Harkins

67. Sutter County Jail Release Report 3/18/19

68. Contract For Services Sutter County Department of Health and Human Services between Sutter County and CFMG from May 1, 2017 to April 30, 2020

69. First Amendment to Contract for Services Sutter County Department of Health and Human Services Inmate Medical Services, May 2018

70. Second Amendment to the Contract for Services Sutter County Department of Health and Human Services, effective May 1, 2020

71. Defendant CFMG's Interrogatory Responses

72. Defendant Sutter County's Interrogatory Responses

**ATTACHMENT D**

Defendants' Exhibit List

A.   Complete CFMG Jail Medical File for Plaintiff

B.   Complete Mercy San Juan Hospital Medical File for Plaintiff

C.   UC San Francisco Complete Medical File for Plaintiff

D.   Defense Expert Dr. Edwin Amos' Curriculum Vitae, and Complete Report

E.   Defense Expert Dr. Alfred Joshua's Curriculum Vitae, and Complete Report

F.   Defense Nursing and Practices and Procedures Expert Kimberly Person's Curriculum Vitae and Complete Report

G.   Defense Expert Karl Erik Volk, M.A., Executive Vice President, J.S. Held, Curriculum Vitae and Complete Initial Report and Supplemental Report

H.   Defense Expert Derrick Olzack's, Curriculum Vitae and Complete Report

I.   Sutter County Jail Custody Files for Plaintiff

J.   Rideout Memorial Hospital Complete Medical records for Plaintiff

K.   Chico Eye Center Complete Medical Records for Plaintiff

L.   Harmony Health Complete Medical Records for Plaintiff

M.   Sierra Injury Sports Rehab Complete Records

N.   Video of Observation Cell from Sutter County Jail depicting Plaintiff